Maldonado v. Morales, Counsel. Your Honors, Dennis Zell, appearing for plaintiff and appellant, Nono Maldonado. Daniel Weingartner, on behalf of the Director of the California Department of Justice. Thank you, Counsel. You may proceed. I would like to reserve ten minutes for rebuttal. All right. Try to watch the clock yourself. I'll try to remind you, but don't count on me. Thank you, Your Honor. Your Honors, welcome to the personal nightmare of Nono Maldonado. For the last ten years, he's been in an ongoing battle with the Department of Justice, and he's been in a lot of play on his freeway billboard. When I first met Nono, one of the first things he said to me was, I thought this was America. I thought you could say whatever you want, as long as it's true. I thought the government couldn't tell you what to say. Mr. Nono Maldonado is here today with his son. He's a lot calmer here in federal court than he was and has been the last few times in state court, because the last few times in state court, he's been summoned, formally summoned and threatened with jail and fines. His offense has been the heinous act of displaying messages on his billboard that do not conform with Caltrans content regulations. Today, this court must decide the procedural question of whether Mr. Maldonado's failure to challenge the constitutionality of the Caltrans regulations scheme during previous prosecutions concerning prior advertisement bars him from challenging the constitutionality of the regulation scheme as to new and different advertisements. It is my contention that when the government attempts to censor speech according to content, the person being censored has a right to challenge that censorship under the U.S. Constitution as to each new thing said, and that accepting censorship in a few instances does not forfeit all right to challenge the censorship in all future cases. The freedom of speech and of the press is much too precious and important to be so easily discarded. With respect to the Rooker-Feldman arguments, Rooker-Feldman is not applicable for at least four reasons. The first point I didn't emphasize in the written briefs, but I'd like to do so now. Traditionally, when Rooker-Feldman has been applied, it's a case where an unsuccessful plaintiff in state court is suing the state tribunal and its officers, and the state tribunal and its officers are actually named as plaintiffs in the federal court. Here, that's not the case. This litigation is between private parties. Secondly, Rooker-Feldman is not applicable because the issues were never actually litigated in any state court proceeding. For one thing, in the state court proceeding involved different advertising. For another thing, no constitutional issues were ever raised in the state court proceeding. The third reason Rooker-Feldman is not applicable is that it's never applicable to general federal constitutional challenges. Four, the as-applied challenges are not inextricably intertwined with any prior state court adjudication, because the district court is not being asked to determine whether any specific adjudication by the state tribunal was wrong. Well, counsel, if we agree with you on your Rooker-Feldman argument, I guess the issue then turns to whether your client should have cross-claimed in state court. With respect to the compulsory cross-complaint question, this — the federal courts have to apply state law, and if the state would determine that the complaints were mandatory, then this court must. Here, the district court didn't cite to any California authority, and in both my opening and reply briefs, I cite to cases — the Morris case, for instance, which states that these issues were not required. Specifically, the Thane case, which involved a Palo Alto man who got into a dispute with the city regarding a weed ordinance. In that case, the California court of appeal said that general challenges can't be precluded under the doctrine of issue preclusion. The compulsory cross-complaint statute is nothing more than a statutory extension of issue preclusion. The problem being that if — it's unjust to prevent one property owner from challenging the general constitutionality of a statute in court, when other similarly situated property owners could do so and be freed of the regulation. That's as to general constitutional challenges. Now, as to the as-applied constitutional challenges, I think even the district court in this case recognized that those could not have been brought in the prior state court proceeding because the messages weren't yet displayed, and he had no intention of displaying those messages at the time of the prior proceeding. Can I just clarify, is your claim now in the federal court limited to a facial challenge and an as-applied challenge with regard to the new message, and the federal claim no longer applies to the old as-applied challenge? Correct, Your Honor. With respect to the old messages, that's the Stanford University one, the cellular phone one, the jeweler's one, we're not challenging any aspect of that. The court has ruled on that. Our concern and what we've asked for is perspective relief and relief as to the messages that were displayed at the time the federal court lawsuit was filed, and as to future messages, because due to the enforcement procedures — to carry that question on sort of one step further, if you look at it not in terms of specific messages, but types of messages, are you saying that the decisions that you're no longer challenging foreclose you from raising an as-applied challenge to future commercial messages? I believe my client, if he displayed a commercial message, would, under California law, have the right to challenge the constitutionality of the statutes and the injunction as to commercial messages, because under California law, the constitutionality of an injunction can be challenged in a contempt proceeding by writ of prohibition. And what's happened here is instead of challenging contempt proceedings by writ of prohibition in the California courts, and under California law, contempt proceedings are separate actions than the underlying actions. He'd have to wait until he was found in contempt. He would have to wait until he was found in contempt to do that? Not necessarily. A writ of prohibition, if Calfrance was trying to enforce an unlawful, an unconstitutional writ of injunction, he could seek a writ of prohibition from the California Court of Appeal to restrain the superior court from enforcing that unconstitutional injunction. Yeah. You see, this is what's difficult about this entire concept, for me at least. When you say that the signs, the Stanford signs, those other signs, that's all over, you've lost. The question is, when you lost there, did you also lose on a potential or a possible constitutional challenge as applied? Is that foreclosed even though you didn't raise it? And if it is, does that then apply if you try in the future to put up a similar sign, not Stanford-Berkeley? I think conceptually what's difficult about this case is that the government generally doesn't regulate by content. That generally doesn't happen. Here it is doing it. And so we have, it's similar to regulating the content of a newspaper. If the government was regulating the content of a newspaper, each day when new stories were printed, new causes of action would arise as applied, because those stories hadn't, you know, the special aspects of those stories hadn't been adjudicated yet. Are you saying it's regulating by content because it says you can't have off-premises advertising of a commercial nature? Is that the content? That's some of the content. I'm also saying that the statute as written doesn't allow commercial, non-commercial messages to be displayed. That is, the statute's overbroad. What I'm saying is that there are so many exceptions to the statute that under cases like Ledoux v. Galeo, the whole reason for the, purported reason for the content regulations, I think, is undermined by all the exceptions. I thought you said, now you've said that the statute bars any advertisement, commercial or non-commercial, off-premises. And so that doesn't sound like content to me, but there are exceptions. Then you said there are so many exceptions that it becomes a content regulation? What the statute allows is on-premise advertising of goods and services. So it's so overbroad, it excludes what the court has previously described as non-commercial messages. It's also the, there are so many exceptions. One of the arguments on the substantive point is that there's been further case law by the U.S. Supreme Court, and when it's possible to have a statute that is both under-inclusive and over-inclusive, and that's one of the arguments under Sidio Ledoux v. Galeo. You're down to eight minutes. Okay. Thank you, Your Honor. Let me ask one question. You're kind of ambivalent as to whether the sign where he paid, was paid $50 to advertise the, whatever, for humanity. Now, are you contending that that's a commercial sign, or is that a public interest charitable sign? One of the issues I'm contending in the lawsuit is I don't know the difference between a non-commercial and commercial advertisement. The court hasn't described it. The payment of remuneration, Shakespeare was paid remuneration for his works. Does that make his artistic, his plays commercial or non-commercial? I don't know. And Justice Brennan and Justice Stevens have made note of the problem with defining non-commercial and commercial. The California Supreme Court, on remand from the Metro Media case, refused to even get into that issue. They said it posed constitutional problems, and they just struck down the whole statute. So I'll turn it over. We'll give you your ten minutes. Thank you. All right. Good morning. Well, I guess the my first counter is welcome to the State's, you know, repeated attempts to have a lawful injunction enforced by the State courts, the State of California. I'll remind you that the one of the principal and underlying distortions, both in oral If you look at the complaint, the California's original complaint to abate a public nuisance, the actual messages, the actual signs for a holiday and Stanford and all shops and stores and activities that were occurring off-premises, okay, were simply the evidence in the trial. The complaint was general notice pleading that said that you are precluded for having off-site advertising, commercial advertising. Commercial? Only commercial? Yes. It's commercial. It doesn't apply to political speech. It has no application. What does the statute say about that? The statute says advertising. The statute says advertising. Okay. Is George Bush's commercials on television showing 9-11 are not advertising? Well, there's obviously political content, and then there's the advertising. But it's advertising. I understand. And the statute, you say, prohibits advertising. The statute prohibits off-premises advertising. Okay. That's the statute in a landscape freeway, on a landscape freeway. But I was trying to find out where. I looked at the statute, and I thought it prohibited both commercial and non-commercial. And you say, no, that's wrong. It only prohibits commercial. And I said, where do you find that? And you say, because it says advertising. Well, Your Honor, the issue in this case is whether it is. No, I'm not asking about the issue. I'm asking about what the statute prohibits. The statute prohibits off-premises advertising.  So that would include advertising for a political candidate. It might preclude advertising for a political candidate. That's correct. And that's not commercial speech. That's non-commercial speech. That's a fine distinction that I'm not sure I'm prepared to answer. That's fine. But I will address the implication of your question. The implication of your question is, what's the proper form for adjudicating that issue? The State court. No, that was not the implication of my question. Okay. The implication of my question was I was trying to find out what the California statute does. Okay. Now, if you want to turn to another issue, we can do that. Well, along the landscape freeway, there's an absolute prohibition against commercial off-premises advertising. And non-commercial. Not if it's pure political speech. If Mr. Maldonado wants to put a sign up on his thing that says, I love George Bush, I support the war, or I'm against the war, the California courts, we, Caltrans, has no jurisdiction under the injunction over that activity. That's purely political speech. Purely political speech. So I think it's been, the court has been misled that this is a case about content. The two prior. Are you saying, so what you're saying is, although there's broad wording in the statute, the California court has interpreted not to apply to political speech? Is that what you're saying? I didn't reach that issue because the advertising before it was purely commercial and was clearly, it was clearly not having no. Then why are you saying the statute doesn't apply to political speech? There's something that happened that caused you to say that this doesn't apply to political speech. So what was it? Well, first of all, it's my understanding and knowledge of the statute and how the Department has actually applied it. Okay. When our folks come to us and say there's an ad up here, I mean, there's a statement up here about the war, and it's on a large billboard, and they ask for my legal advice, I tell them we have no jurisdiction over that, even if it's along a landscape freeway. So it's my personal interpretation of the statute. All right. But it's irrelevant in the current context. It's absolutely irrelevant to the current litigation. The issue in this Court under Rooker Feldman is, both under the Fontana ruling from this circuit, is whether the requested relief interferes with the State court judgment. It specifically and expressly asks that the injunction be prevented from being enforced. The injunction. Does it apply to, quote, there's a sort of a pretense here that the old message was that the subject of a former lawsuit, and the new message is the subject of a new lawsuit? Why isn't that the case if you're? Your Honor, can I just finish? If your view is that the statute's limited to commercial advertising, and you're opponent doesn't think that's what the statute's limited to, and he comes in and sues and says, I want a declaration that noncommercial advertising is constitutionally permitted, and that's a totally different subject from what you say you're interested in. But that's a general constitutional challenge. He has no standing to make it. Well, he has a sign. I want to put up a sign favoring, you know, Habitat, favoring charities. And that's exactly what the district court addressed in the new messages. The new messages were not subject to a contempt order. They were the, quote, new messages, correct? It's not ripe. There's no issue. There's no issue that he's being punished for any political speech here. And what the court, what Judge Breyer said was that a State court can hold the injunction up with its prohibitions and address the very issue that you're concerned about, and that is, could that injunction be used to suppress political speech? And I submit to you that the State court is perfectly capable of addressing that issue of whether that injunction applies to or could apply to political speech, and he has his remedy, okay? It's not ripe before this Court. And that's why that aspect of the case was dismissed on ripeness grounds. Is there any proceeding currently going on in State court? There's no proceeding currently going on in State court right now, Your Honor. We've been waiting for the outcome of this case here. There's nothing. So he can say, since you're waiting, that the State is just ready to jump and hold me in contempt and I have a constitutional right in respect to commercial speech, to charitable speech. Let's put it that way, or political speech. Oh, he's absolutely right to political speech. Okay. Now, if you – I don't think we ought to – because there are other issues that I would like to address here, okay, in my limited time, if you would allow me to, okay? I believe that a State court is perfectly capable of addressing the issues that are raised if, in fact, the State attempts to seek a contempt order for what is otherwise political speech. It can rule that the injunction simply doesn't apply, okay? And then again, the case is not ripe. Now, if – Is the standard that because the State is capable of doing it, the Federal court can't? Well, to the extent that the Federal court would undermine the very – a district court by its judgment, suppose you grant him the relief he's seeking and a district court declares the entire business and professions code unconstitutional. It finds that distinctions between off and on premises are irrational, okay? And it declares the entire statute unconstitutional. Guess what? The next time Mr. Maldonado puts up a purely commercial advertisement for the Holiday Inn shopping center, he will bring that Federal court, district court judgment into court to block the enforcement of a valid, lawful, final State court judgment, the precise outcome that Rooker-Feldman says no to, okay? On the – and that's the fundamental defect here. That injunction was prospective. It said – it didn't limit itself to some – the original judgment wasn't limited to the original messages. It was prospective. It says you are barred from having commercial off-premises advertising, period. So that was the injunction. If this statute is unconstitutional, it's all over. It can't be said. I think it would – if he – if he got a judgment from a district court that the statute was unconstitutional, the State court injunction would be void. Would be void. And this is the crossover to the related counter – to the necessary compulsory counterclaim here. That 1983 claim that he now brings before you should have been raised before, because today he seeks to attack the very underpinnings, the entire statutory scheme under which the injunction was issued. Now he wants to attack that. Now, if he had to do that in a compulsory counterclaim, would he have had to add parties, individuals in – from Caltrans or the State? No, I don't think so, Your Honor. You can't bring a 1983 claim against the State. He could bring it against its director. That's what I'm asking is would he have to add parties? Well, add parties from the original lawsuit? Yes. Well, I think making this fine distinction between the State of California and its director, okay. Yeah, there is a fine distinction. Okay. Well, I suppose you could argue he would have to add the party for a 1983 to have prospective injunctive relief, okay. But so what? It's still a related counterclaim. He just simply adds the director's name. I don't think that's a critical distinction here. I think under the compulsory counterclaim, that's what he had to do. He had to file a compulsory counterclaim because it was the same series of transactions and same occurrences, okay. And that's what the district court found. All right. So those were two separate grounds, Rooker-Feldman and also compulsory counterclaim. There's a third ground, and that is the statute of limitations. It is undisputed that 1983 claims can be brought in State court, okay. It is undisputed that at the time appellant has argued that the statute should be told until all State court remedies have been exhausted. They were all exhausted as of March 28, 2001, when the petition for review before the California Supreme Court was denied. Your Honor, may I finish? Now he is putting up signs, some of which appear to be either political or charitable or whatever you want to say. Now, those were not at issue in the State proceedings. Can he bring a challenge to the statute in respect to these claims? Because you say they're not ripe. Well, by your argument, there is no statute of limitations. All he has to do is change one word and one sign after he's found in contempt. Three weeks later, a year, two years later, he puts up another sign, changes a few words, becomes a new message, and there's no statute of limitations, none whatsoever. The statute is based on the injury. The injury, as the court below noted, is his right to display commercial advertising. That injury, if it were told at all, ended on March 28, 2001. At that point, the one-year statute of limitations in California Code of Civil Procedure 340 was applicable for personal injury. Appellant has said, no, it's two years. Unfortunately for him, the two-year statute of limitations didn't come into effect as a new law. It didn't come into effect until January 1, 2003. And there's a case below in the central district that basically actually has done that, applied that statute. And it says it's not retroactive unless the legislature says it is. I don't understand your answer to Judge Fletcher's question. Your question was, there was a new, quote, in his view, type of advertising. Not one word, not two words, but a type. No longer commercial. It's charitable, political, whatever it is. He says that happened two, three days or something before the federal complaint. So Judge Fletcher has asked, isn't it true that the statute of limitations has not run as to that billboard, that advertising? So what's your answer? Well, my answer is that the challenge is ultimately to the injunction, because it's the application. This doesn't exist in the abstract. First of all, it's not right. It's not before the Court, okay? The challenge is truly to the injunction. The injunction is nearly five years old, okay? Well, now, what does the injunction say about political advertising? It's silent as to political advertising. It's absolutely silent. Yes. The injunction's in the record. Then why is his challenge to the injunction with regard to the new advertising? Isn't his challenge... Not right. Well, you just said when Judge Fristani said to you, when there's a new type of advertising, why does the statute apply? And you said, well, because he's challenging the injunction. I don't understand that answer. I agree. That's confusing. All right. What I'm saying is that suppose Caltrans, okay, because his challenge is not – there's nothing right. There's no controversy, right? Is he permitted to simply – is his right to now challenge a lawful judgment where the statute of limitations has expired, revived solely because he simply throws up new messages? That doesn't make any sense. No, but he certainly is allowed. He says, this is a message that I don't think is commercial. I think, you know, buy contraceptives at Savon. They're good for public morality. Right. Now, is that commercial or not? He says, I don't think it's commercial. Well, I think that's a factual issue that would be determined at the trial court, the state court, if Caltrans attempted to enforce against that message. And instead of that, he just says contraceptives are good, non-commercial. I think that's purely political. Okay. So he says, but I think that's purely political. Yeah. And he files a suit and says, I think this statute bans it. That's a totally new problem. Right. Okay. And in that – when in that suit, the court says, you know, the whole statute's no good. That could happen in that suit. This whole statutory scheme is a First Amendment violation. I'm not suggesting they would, but I said conceivably a court could in that case say the statute's invalid. That might affect the injunction. Well, yeah, but the thing is, you're saying he puts up a purely political speech. The sole issue now for the trial court is whether some sort of declaratory relief that it doesn't apply to political speech. And, oh, by the way, while we're litigating this, okay, I'd like to challenge its application to commercial speech, too. Okay. That's precisely what Rooker Feldman says you can't do. Okay. If he wants to declare – He says here's an overbroad statute that just says all speech is banned. That's what it says. No speech can be – no speech may be had in California. That's the way he interprets a statute. A court says, you're right, that whole statute's invalid. That may affect eight injunctions that State courts have issued over the past years. Does that deprive the Federal Court of jurisdiction? No, it doesn't, because the declaratory relief there, here, that's a hypothetical that's not before the court. In this case, he's not asking for what you claim he's asking for. He specifically says, if you would just please read the complaint, set aside this injunction as it applies to commercial advertising. I want to put up signs for Holiday Inn. That's what this is about. Okay. To allow him to set aside this injunction attacks the State court's ability to make a simple distinction between political speech and off-site advertising, all of the things that he's been found in contempt of. There are two contempt citations here. I would ask you to read them. There's not an ounce of political speech in either one of those. They were clearly, purely off-site commercial advertising. This is an end run and a ruse, okay, to swing and to attack. Please, I would ask the court, take a look at the complaint. Now you're repeating, so I will interrupt you. If you think this is a ruse, and he's changed the billboard to put these charitable messages up there, and that's the ruse, so why didn't you just enter an agreement that says those are okay, and then he wouldn't have that in to the court? There's nothing before the court that says right now that he's asking us for whether if he wants a letter from us that says purely political speech is okay. I'll say right now. No, no, that's not what I said. If what you really are saying, it's not right because the State of California doesn't have any problem with his current billboard, you could have done that. I didn't say that. Okay, so you do have a problem with his current billboard. To the extent that it's commercial speech, when you have, for example, Peninsula Habitat for Humanity, whose offices are not on-site. Okay, so there is a real dispute as to his current billboards. It's not – there is a – there can be and there is a real dispute as to what is political speech and what is advertising, and clearly, the State court is in the best position to adjudicate that issue. It's a different answer. The question is, is there a real dispute between the State and Mr. Maldonado about his current billboards? And you said the answer is yes. Only to the extent that they are involved in commercial advertising, not the political messages. Okay. The political message here is stop world terrorism. We don't have a problem with that. There are phone numbers, commercial numbers on there. There is yes. You have a problem with his current billboard. Exactly. And a State court is perfectly capable under the injunction of deciding whether that message violates the injunction. Thank you, counsel. Thank you. I think the exchange you've just heard demonstrates how unconstitutional the statutes are. Well, we're not going to discuss that case. But I'd like to emphasize that my client has no way of knowing what, by reading the statutes, what is permitted and what is not permitted. And therefore, there's a live controversy here. He is chilled from putting up advertisements because he's afraid Caltrans is going to bring him into court and try to put him in jail. Now, Justice Fletcher asked whether any State court proceedings are presently ongoing. The answer is no. But last February, after the district court dismissed and after notice of appeal was given to this court, there was a State court proceeding. Mr. Weingartner, who today says purely political speech is okay, last February was in State court arguing that the very messages displayed on the billboard, as alleged in the complaint, did violate the Outdoor Advertising Act. What happened to that State court proceeding? The State court, the trial judge in the Superior Court of San Mateo, ruled that the Habitat for Humanity display violated the Act. He ruled that the other message did not violate the Act. The reason I could have appealed, not appealed, there is no appeal from a California contempt proceeding. I could have taken a writ of prohibition up to the California Superior Court to challenge the constitutionality of the injunction and that order. However, because this Federal court proceeding was already filed and because I had picked a forum, a Federal court, to have these questions resolved, I felt that it was best to let the Federal courts decide the question. Under the Johnson v. DeGrande case, the U.S. Supreme Court says that a plaintiff has the right. There are no. Now, is there some res judicata or collateral estoppel effect? No, Your Honor. Of that particular judgment? No, Your Honor, because California law, and this is peculiar, in Federal court the judgment is the judgment. In California, res judicata does not bar a proceeding which challenges the constitutionality of a void injunction, an injunction that's issued in contravention of the Constitution. And so California would not give this any res judicata effect. And one of the points I ---- Even though you hadn't raised the constitutional issue in that proceeding? Judge would not let me raise the constitutional issue in that proceeding. Did you try? What's that? Did you try? I tried. What did you do? I filed a trial brief. I attempted to argue it, and he said, no, you'll have to use an extraordinary writ if you want that issue decided. What happened was the State of California tried to do an end run around the Federal court jurisdiction and have these issues adjudicated first. It's really rather remarkable that nobody ever mentioned any of this until just now. I ---- Well, this case was complicated enough before you told us that. The reason I didn't bring it to the court's attention is because, from my point of view, and according to the complaint that's on file, there's an ongoing dispute. So this is just another instance of messages. My client currently wants to display Giovanni Taccogino, owner of Palermo Restaurant located at 452 University Avenue in Palo Alto, says, eat Italian food. It's good for you. That's a message he wants to display, but he's afraid to display because, heck, when he displayed the stop world terrorism, he was threatened with jail and fines. Another message my client wants to display, but he's afraid to display, is Rotary International, service above self. Support your local rotary club, www.rotary5150.org. Now, he wants to take compensation for this message, but he's afraid that that would violate the statutes and the injunction because it might be construed as commercial. Now, that's a different message than the Habitat for Humanity, and it raises different issues, but it's important. Another issue my client wants to put up there, support the San Francisco Giants, a great baseball team. That message has actually been displayed on his billboard during the pendency of this appeal for ---- Is there a truth in advertising, Carl? The government's interest in truth is the only, I think, legitimate interest in regulating content of commercials. In this proceeding in which you weren't allowed to raise, this latest in a state court proceeding in which you weren't allowed to raise the constitutional arguments, how did that proceeding begin? It began with the State of California summoning my client to court on an order to show cause, and they wanted a week in jail. They wanted fines. They wanted attorney's fees. They wanted restitution for any compensation received. And when did that proceeding end? That was, what, February or March of 2003. It was a one-day hearing. And it concerned which billboard? It concerned the messages alleged in the complaint. Okay. When I went back to district court, I would seek leave to amend that complaint to set forth the messages I've talked about today, because there's an actual controversy about whether those messages would be permissible. And that's the point of this whole thing. Every time he decides to put up a new message, he doesn't know whether it violates the statute or not. And as Mr. Weingarten said, when you asked him what about political speech, he said, well, something to the effect, well, I'd have to think about it. Well, you mentioned, well, why can't there be some agreement between Caltrans and Mr. Maldonado. I thought about that, and that would effectively be a prior restraint. Every time Mr. Maldonado wanted to display a message, he'd have to get Mr. Weingarten's permission. And I find that unacceptable. As purely political speech, I think under the statutes itself, you ask about George Bush, I think George Bush would have to be living in the warehouse underneath the billboard in order for it to qualify as fair speech under the statutes, because that's the only way it would be on site. And I have one other point with respect to the issue of the compulsory cross-complaint statute. California courts say that statute should be narrowly construed. That's the database state case. And I think in these circumstances, what that means is that the prior message, the cross-complaint statute needs to be narrowly construed to only apply to those prior messages, not liberally construed to apply to all future messages. Thank you. Thank you very much, counsel. Case just argued will be submitted. Thank you. Does the Court want any information on the intervening State court proceeding? We'll ask for it if we want it. Okay. Thank you. Thank you. Next case for oral argument.
judges: B. Fletcher, Reinhardt, Restani